## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND

**CIVIL ACTION NO. 0:04-CV-89-HRW**

**TRINA SARTAINE, Individually and**
**ELLIOT COUNTY SANITATION, INC.**                    **PLAINTIFFS**

**V.**

**CHARLES PENNINGTON, Individually and**
**In his official capacity as JUDGE EXECUTIVE,**
**ELLIOT COUNTY FISCAL COURT and ELLIOT**
**FISCAL COURT,**                                      **DEFENDANTS.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants' Motion for Summary

Judgment [Docket No. 28] and Defendants' Motion for Leave to File a Reply

Memorandum [Docket No. 30]. Now fully briefed, the matter is ripe for decision.

## I. FACTUAL BACKGROUND

Plaintiff Elliot County Sanitation, Inc., had a contract with Defendant, Elliot

County Fiscal Court since 1994 to collect solid waste throughout Elliot County.

Plaintiff Trina Sartaine alleges that her company, Plaintiff Elliot County Sanitation,

lost the contract for political reasons, despite the fact that, as Plaintiff claims, she

was the low bidder. Specifically, Plaintiffs allege that Trina Sartaine's failure to

support and associate with Defendant Charles Pennington in the 2002 county

elections led Defendant Pennington and Defendant Elliot Fiscal Court to terminate

her contract with the County.

Plaintiffs' contract with Elliot County had been renewed once but was scheduled to expire in May 2004. In April of 2004, after receiving bids from several potential contractors, the Elliot Fiscal Court evaluated the bids and awarded the new contract to River Cities Sanitation. Plaintiffs brought  suit under 42 U.S.C. 1983, alleging violations of their First Amendment rights to freedom of speech and freedom of association as well as violations of due process guaranteed by the Fourteenth Amendments. Plaintiffs seek judgment against Defendants, an injunction mandating that the contract be re-bid, damages for lost earnings, suffering and humiliation, punitive damages, attorney fees and costs, and any additional relief to which plaintiffs may be entitled including interest on any judgment rendered.

Defendants filed the instant dispositive motion arguing that Plaintiffs' claims fail as a matter of law because the Fiscal Court neither terminated Plaintiffs' contract nor prevented its automatic renewal (i.e., the contract expired by its own terms). Defendants further urge summary judgment on the ground that the bidding process was not influenced by political motivations but rather by objective criteria. Finally, Defendants contend that Plaintiffs' claims are barred by operation of the doctrines of sovereign immunity, official immunity, and qualified immunity. For

the reasons discussed below, the Court finds that the Defendants are entitled to judgment as a matter of law.

## II. THE SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Plaintiffs.  Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiffs in an effort to determine if any genuine issues of material fact exist.  However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a

directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).  As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

## III. ANALYSIS

### A. Termination or Expiration of the Contract

Plaintiffs contend that the sanitation contract held with the County since 1994 was terminated because Plaintiff  Trina Sartaine exercised her rights to freedom of speech and association during the 2004 county elections. Defendants argue that Plaintiff was merely a bidder for a government contract. Both parties rely on, *Board of County Comm'rs, Wabaunsee County, Kansas v. Umbehr,* 518 U.S. 668, 116 S. Ct. 2342, 135 L. Ed.2d 843 (1996), in support of their contentions. The *Umbehr* court held that the First Amendment protects against the termination or prevention of automatic renewal of an at will government contract in retaliation for the exercise of freedom of speech.

Specifically, *Umbehr* involved the termination of a government contract in retaliation for the independent contractor's outspoken criticisms the County Board of Commissioners. The *Umbehr* plaintiff had a contract with the county for trash collection, which, by its terms, was automatically renewed each year unless either

4

party gave 60 days notice of termination. After the plaintiff's harsh public criticisms of the County Board, the Board voted to terminate the contract. The *Umbehr* court held that the plaintiff was entitled to rely upon the contractual relationship with the county insofar as it would not be terminated *because* of any speech on matters of public concern. The protection is analogous to that afforded government employees. As the *Umbehr* court explained, "[t]he similarities between government employees and government contractors with respect to this issue are obvious." 518 U.S. at 674.

In this case, such First Amendment protections are not as clear. The instant Plaintiff is situated differently in that the sanitation contract with Elliot County was set to expire in May 2004. The contract  thus was not *terminated* as in *Umbehr*, but rather, expired according to its own terms. The *Umbehr* court specifically declined to extend its protections. In fact, the court carefully limited its holding: "because (plaintiff's) suit concerns the termination of a pre-existing commercial relationship, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." *Umbehr* at 2352. In light of Plaintiff's status as a mere bidder seeking a government contract, the First Amendment protections of *Umbehr* are not implicated.

Plaintiffs also claim that the bidding process itself was a "sham and a

smokescreen designed to provide cover for political retaliation," and offer evidence of threatening and retaliatory statements in support of such contention. Even assuming the veracity of Plaintiffs' allegations concerning threats to terminate her contract, two critical facts remain unchanged. First, Plaintiffs' contract expired by its own terms in May 2004, regardless of any alleged threats or actions by Defendant Pennington. Second, the bidding process was not only authorized, but required by Kentucky law. *See* KY. CONST. § 164.  Plaintiffs therefore had no reliance, expectation, or entitlement to a contract once the term expired in May of 2004.

## B.  Political Motivation

Even if this Court were to ignore the distinction between the *Umbehr* and the instant case and find that the plaintiffs justifiably relied on a contract with Elliot County, Plaintiffs' claim of political retaliation nevertheless fails. To be successful, Plaintiffs would have to show that the sanitation contract was terminated, and that the termination was motivated by Plaintiff's speech on a matter of public concern. Upon a successful showing that Plaintiff's speech and associations during the 2004 county elections were substantial or motivating factors, the burden would then shift to the Defendants to show by a preponderance of the evidence that in light of the knowledge, perceptions, and policies at the time, the outcome would have been the

6

same regardless of the protected speech. *See Umbehr, supra,* and *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Employing this standard, the Plaintiffs' claims fail.

Plaintiffs' claims of political retaliation are directed at two distinct events. First, Plaintiffs argue that the decision to advertise for bids on the new contract was in itself politically motivated. Second, Plaintiffs argue that following the submission of the bids, the award of the contract to a bidder other than Plaintiff was an act of political retaliation.  For the purpose of this analysis, each will be taken separately.

As evidence that Plaintiff's constitutionally protected activity was a substantial or motivating factor in the bidding and subsequent award of the contract, Plaintiffs offer threatening statements made by Defendant Pennington. According to Trina Sartaine's own deposition, following the 2004 election, Defendant Pennington told her that he would "destroy her financially." Plaintiffs also offer evidence that Pennington had told a third party that he would "make sure of it" that they did not get the contract again. Plaintiffs also offer evidence suggesting that Pennington said openly that "he would give the bid to 'whoever' he 'wanted to have it.'"

Defendants argue that the decision to bid out the contract was not politically

motivated, and based on the record, the Court agrees. As discussed above,

Plaintiffs' contract with Elliot County was set to expire in May of 2004. The bid

process itself is mandated by Section 164 of the Kentucky Constitution, which

reads:

> No county, city, town, taxing district or other municipality shall be
> authorized or permitted to grant any franchise or privilege, or make
> any contract in reference thereto, for a term exceeding twenty years.
> Before granting such franchise or privilege for a term of years, **such
> municipality shall first, after due advertisement, receive bids
> therefor publicly, and award the same to the highest and best
> bidder**; but it shall have the right to reject any or all bids. This section
> shall not apply to a trunk railway. KY. CONST. § 164 (emphasis
> added).

Additionally, Defendants' affidavits show that the County had been advised

that Kentucky law mandated that the contract be re-bid. Contracts for garbage

collection or disposal of solid waste between a county and a private party fall

within the scope of the provision requiring the bid process. *Eastern Kentucky

Resources v. Arnett,* 934 S.W.2d 270, 273 (Ky. 1996). Upon the expiration of

Plaintiffs' contact with Elliot County, therefore, the county was required to

advertise for bids. Plaintiffs' claim of political retaliation in this instance therefore

fails as a matter of law.

Plaintiffs maintain that the contract was awarded based on constitutionally

impermissible reasons. In support, Plaintiffs submit evidence of certain elements of

the bid package as well as the affidavits of outside observers who agree that Plaintiffs' bid was "the lowest." The Court notes, however, that as these observers were merely spectators to the Fiscal Court meeting, their level of personal knowledge as to the content of all bids submitted is questionable. Plaintiff states that her bid was 901 dollars less per month than the bid that was ultimately accepted by the county. To support this claim, Plaintiffs offer a mathematical comparison of the bids for 3 elements: residential or household collection, senior citizen household collection, and commercial dumpsters. Based on these figures, Plaintiffs argue that the contract should have been awarded to them.

Plaintiffs' interpretation of the bids, however, diverges significantly from the actual criteria used to evaluate the bids. Defendants submit the certified records of the Fiscal Court which indicate that the bid packages actually requested prices on 14 different elements (as opposed to the three represented in Plaintiffs' brief). Defendants also submit evidence to the effect that the bid package requested by the county was agreed upon after working with the Kentucky Office of Local Government and modeled after samples received from that agency. The evidence also shows that the bids were evaluated based on a scaled point system, with the price being but one factor.

The request for bids describes the "Method of Award–Ranking Approach"

9

as follows:

> The County intends to award a contract to the vendor, whose bid,
> conforming to the solicitation, is the most advantageous on the basis
> of "best value" for all products, services and requirements contained
> herein.
> An agency evaluation committee, or a designated individual, will
> evaluate the information provided by the vendors in response to the
> established measurable criteria contained in the solicitation. (The
> fiscal court will be the evaluation committee)
> With the ranking approach price is one of the measurable criteria
> components of the solicitation. The measurable criteria are added
> together to determine the vendor's total score. The vendor with the
> highest score has the highest ranking. Award is made to the vendor
> with the highest ranking.
> (Defendant's Motion for Summary Judgment, Exhibit 8).

According to the Fiscal Court records, evaluations were based upon the
following measurable criteria: price (80 points); years in business and letter of
assurance from landfill (20 points); completion of all items of information
requested (10 points); letter promising to begin collection on May 1, 2004 (5
points). The actual packages submitted by all bidders and points awarded on each
individual element are included in the Fiscal Court records appended to
Defendants' motion. Based on the stated criteria, as evidenced by the certified
records of the Fiscal Court,  the Plaintiffs' point total was not the highest. Plaintiff
Elliot County Sanitation received a score of 90 total points. River Cities Disposal,
to whom the contract was awarded, received a total score of 95 points. The third
bidder, BFI, scored a total of 80 points. (Defendants' Motion for Summary

Judgment, Exhibit16)

Under the summary judgment standard set forth above, Defendants' properly supported motion places the burden on the Plaintiffs to produce specific evidence raising an issue of material fact. Plaintiffs' evidence does not carry this burden. While Plaintiffs raise a question of fact regarding the Defendant Pennington's alleged statements, this alone does not tend to prove their claims of political retaliation. Plaintiffs have not produced any evidence that would support a finding that Defendant Pennington had any influence over the fiscal court or the conduct of the bidding process. As the bid process is mandated under the Kentucky Constitution and is committed to the exclusive authority of the county Fiscal Court by statute, the County Judge Executive, as a matter of law, plays no role in awarding a solid waste contract.

Even construing all doubt in Plaintiffs' favor, while Defendant Pennington may have *threatened* to interfere with Plaintiffs' contractual rights and financial interests, Plaintiffs have offered no credible evidence to suggest that Pennington in fact had any influence whatsoever over the bidding process. Kentucky law commits the management of solid wastes "by ordinance or contract or by both," to the exclusive authority of the county fiscal courts. KY. REV. STAT. ANN. § 67.083 (3)(o) (Banks-Baldwin 2005). Keeping in mind the standard for political retaliation

11

set forth in *Umbehr* and *Doyle*, all objective evidence before the court suggests that Pennington's alleged statements played no causal role in the bidding and awarding of the contract.  Further, there is no evidence to suggest that the Fiscal Court was driven by any unconstitutional motive or approved an unconstitutional policy. Rather, all evidence suggests the contract was awarded to the highest scoring bidder based on the evaluation scheme agreed to prior to receipt of the bids.

## C. Plaintiff's Procedural Due Process Claim

Plaintiffs' Due Process Claim largely depends on the same set of core facts as does the claim of political retaliation. The protections of procedural due process apply only when there is a protected interest at stake. *Lake Michigan College Federation of Teachers v. Lake Michigan Community College,* 518 F.2d 1091, 1094 (6th Cir. 1975). Per the discussion in Section III A, when Plaintiffs' contract with Elliot County expired, so expired any relationship on which Plaintiffs were entitled to rely. Following the expiration of the contract, the Plaintiff was essentially a job applicant or more particularly, an employee who was not rehired. This alone does not invoke a cognizable interest protected by prodcedural due process under the Constitution. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972) (holding that mere unilateral expectation of a benefit does not amount to a protected property interest); *Perry v.*

12

*Sinderman,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698 (1972) (holding that not being

rehired does not by itself invoke a liberty or property interest).

Even assuming that Plaintiffs had an interest protected by the Fourteenth

Amendment, there was no showing of a procedural inadequacy that would render

the award of the contract to River Cities constitutionally defective.


**D. Immunity**

Defendants also argue that Plaintiffs' claims against Elliot Fiscal Court are

barred by the operation of the doctrine of sovereign immunity. Additionally, as to

Defendant Charles Pennington, Defendants argue that Plaintiffs' claims are barred

by official immunity and qualified official immunity. The Court considered these

arguments but does not agree.

As a general matter, county governments are entitled to state sovereign

immunity under Kentucky law. *Schwindel v. Meade County,* 113 S.W.3d 159, 163

(Ky. 2003)**.** However, state treatment of sovereign immunity has no bearing on the

question of a party's immunity from liability under 42 U.S.C. § 1983, as only

federal law is controlling upon that issue. *See Howlett v. Rose,* 496 U.S. 356, 110

S.Ct. 2430 (1990); *see also Jefferson County Fiscal Court v. Peerce,* 132 S.W.3d

824 (Ky. 2004). Under federal law, counties are generally not considered arms of

13

the state. The Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'"*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177 (1979). Elliot Fiscal Court, therefore, is not protected from Plaintiffs' § 1983 action by sovereign immunity.

A suit against a defendant in his official capacity is really a suit against the local governmental entity. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th Cir. 1989). However, only those local officials with authority to issue "final governmental policy" may subject the local governing body to 1983 liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986). As pertains to Defendant Charles Pennington in his official capacity, Kentucky law does not vest in him the "final policymaking authority" regarding contracts with the county for garbage collection. That authority is exclusive to the Fiscal Courts. Any actions taken by Pennington in this regard, therefore, may not subject the County to liability, but rather may only create liability, if any, on the part of Pennington as an individual.

Whether Defendant Pennington in his individual capacity is entitled to assert qualified immunity requires a two step inquiry. First, do the facts show the

14

Defendant violated a constitutional right of the Plaintiffs? Second, is the right clearly established, or would it be clear to a reasonable officer that the conduct was unlawful in the situation he or she confronted? *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). As discussed above, nothing in the record indicates that Defendant Pennington had any influence over the bid process surrounding the sanitation contract. It was the Elliot Fiscal Court, and not Pennington, that ultimately made the decisions Plaintiffs complain of. As the Court can find no constitutional right violated by the actions of Defendant Charles Pennington, the inquiry into qualified immunity is unnecessary.

## III. CONCLUSION

The Court concludes that Plaintiffs have failed to carry their burden under the summary judgment standard. There is not sufficient factual evidence that would permit a jury finding for the Plaintiffs, and as such, Defendants' motion for summary judgment will be **SUSTAINED**.

**ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED:**

(1) that as the time afforded by Local Rule 7.1(c) had not yet expired when Defendants tendered their Reply Memorandum, leave of Court to file is unnecessary but nonetheless **GRANTED;**

(2) that Defendants' motion for summary judgment is **SUSTAINED;**

and

  (3) a judgment in favor of the Defendants shall be entered

contemporaneously herewith.

  This January 24, 2006.

Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**